15 minutes, do you want to reserve any time for rebuttal? I will, your honor. Maybe five minutes. Before we proceed, I have a question. So the issue for your client here is that the court curtailed the cross-examination or the court limited the cross-examination? And if so, which and why? The court prohibited the defense from introducing evidence indicating that Sharice Holland's son was being prosecuted for attempted first-degree murder and that Sergio Rodriguez was the victim in that case. But you weren't prohibited from bringing that evidence out if she came off her original testimony which preceded the second incident, correct? That's incorrect, your honor. That was, I think, a point of contention and I think an issue with the state's brief. It seems to rely on what the... Well, if I could just follow up on my question. I don't mean to interrupt, but so are you saying by prohibited that the right to cross-examine was prohibited or it was limited? That's what I want to be clear about. The right to cross-examine wasn't a bar. The right to cross-examine on that one issue was completely barred, but the right to cross-examine in general was limited. There was permitted cross-examination on other grounds, but on the one issue, whether Ms. Holland's son was shooting at the defendant in this particular case, that could not come out under any circumstances. And I think that answers a little bit your question, Justice Burke. The court eventually does hold, and I believe it's on page four of the reply brief, I put down the final holding of what the court's ruling is. And eventually it just says, you know, you have a right to say that there's a case pending, that these people are bringing the case, but I'm not going to allow any connection between that case and Mr. Rodriguez, that specifically the defense could not inform the jury that Mr. Rodriguez was the victim of the son's case. And that's your understanding of what the ruling was? Because there seems to be a dispute between the defense and the state as to what the trial court's actual ruling was on that issue. I agree that there is a dispute. I think, and perhaps the state can maybe elucidate why it wrote what it did, but I think that part of the problem comes in the fact that the court made three different rulings. So the state made its initial motion in limine, and the court said, I think I'm not going to allow this, but I want you guys to brief it. And then the court does say, okay, you can bring in this evidence. And then the court says, you can't bring in this evidence at all. And so there are at least three different rulings in this particular case, and when the motion for a new trial was filed, I believe that the trial judge probably only looked at the very first ruling and characterized that as the final ruling of the court, but it wasn't. And I believe that trial counsel appropriately went with the last ruling of the court before the evidentiary phase began. Did her testimony change from the first trial, Ms. Holland's testimony, change from the first trial to the second trial in any way? It did. She testified at the first trial that Mr. Rodriguez was messing around with the cars after the shooting occurred. At the second trial, she testified very clearly and very specifically that she saw Mr. Rodriguez putting something into one of the cars after the shooting occurred. Other than that, did her identification of the defendant change? Did her recollection of the events, other than the messing around with the cars statement? Anything else? Nothing else changed between the testimony from the first trial to the second trial, other than that one specific statement, Your Honor. But there are a few things that I think are really important to keep in mind. The defense has an absolute right to introduce evidence of bias, motive, or interest. In this evidence, specifically, that Mr. Rodriguez was the victim in her son's case is evidence of both bias and motive. The entire defense case was that she was incredible and that she hated Mr. Rodriguez and that there was this huge family feud going on between these two families and that did come out during the trial. Part of it did come out, but the most important, most probative evidence that it culminated in this attempted murder, that never came out. And the jury never got to hear this evidence. So the defense claim was that she was lying all along, that she found an opportunity to put this shooting on Mr. Rodriguez, that she told the police that he committed this on the night of the event, that she testified consistently with her statement. The defense claim was that she was always lying and it could reasonably be inferred, or the jury could have thought, well, why didn't she ever change her story? Why didn't she come forward and tell the truth? I think this definitely fills in that question. This wasn't some kind of fight that ended once the fence went up or once that case in which Mr. Rodriguez was alleged to have punched her in the face. It didn't end when that case was over. This continued through time. It was escalating, ongoing, and serious, and it culminated in her son being prosecuted for attempting to kill Mr. Rodriguez. But if her testimony didn't change, other than the one statement about messing around with the car, if it didn't change, isn't it more prejudicial than probative? How can you say that this future event, so she testifies at the first trial, her testimony doesn't change, even though there's an intervening event that you want to bring in. You don't think that that could possibly be a little bit more prejudicial than probative? When it clearly didn't change her testimony? Evidence that a witness is incredible is always prejudicial. That's the point. The goal was to show that she hated Mr. Rodriguez, and that she so hated him that she would continue this lie, even when sworn under oath. So that would certainly be evidence of a bias, and bias evidence is always predictable. Was she allowed to bring out her feelings about the defendant? I'm sorry? Was the defense allowed to probe her regarding her feelings about the defendant? I don't recall any testimony or any questions in the record specifically asking, do you hate her? If the court allowed the defense to bring out how she felt about the defendant and what their relationship was, would that have cut against her argument that they weren't allowed to probe her bias? No. I think evidence of bias is absolutely always admissible, and just because she says, I hate him, that doesn't necessarily explain how much conflict there was between these two families. But going back to the testimony, so the identification was questioned and was brought out to be somewhat inconsistent during the trial, right? Between the various witnesses? Right, yes. Yeah, okay. And then the fact about the feud going on between the neighbors, that also came out? To a limited degree, but yes. And to the extent that she didn't get along personally, she didn't get along with them, that came out as well? Yes. Okay. So isn't this other issue just another log on the fire? I mean, we already had enough there to have a question about her credibility and possible bias in terms of her testimony. Isn't this just another log on the fire? It's a pretty important log, Your Honor. And yes, there was some evidence that came out about this, but, for example, just because there's additional evidence of bias, that doesn't mean that it's not admissible. When evidence is developed over time, as evidence of bias necessarily will be, that becomes admissible, same as any kind of impeachment evidence. If, for example, one of the witnesses who we were testifying ended up getting a conviction in the intervening period, that definitely would have been brought up during that witness's testimony. Just because it didn't occur prior doesn't mean that it's not admissible. At the point of time of this trial, there wasn't a conviction on the matter yet, right? I mean, it was still pending? In the Sons case? Right. Correct, Your Honor. And I think that I want to separate two concepts here, bias and motive. So, certainly this is additional evidence of the bias, of the hatred that Ms. Holland had for Mr. Rodriguez, and that was the crux of the defense. But there's also a motive issue here, too. The State had leverage over Ms. Holland, and it's important to keep that in mind. If she wanted to come forward and tell the truth, as far as the defense was concerned, she certainly would have had less of an incentive to do so now because the State was now prosecuting her son and may punish her son because she has now changed her story. There's an additional issue there. I mean, Mr. Rodriguez didn't have any prior convictions before this conviction in this case, and he is the complaining witness in the other case against her son. He's very likely to testify unless the son puts in a plea, and it makes him less credible as a witness if he's convicted in this particular case. Certainly somebody's going to ask him, have you been convicted of a prior felony? And that would come out at the son's case. Without conviction in this case, that's not going to come out. And so Ms. Holland certainly has motive to continue with what the defense considers to be a lie in terms of the narrative of the events. So it is evidence of bias. It's also motive evidence, and both of those things are admissible as a matter of right for every defendant in a criminal case. So that's the primary issue, or at least the first issue that we raise. I don't want to say primary because there are ineffective assistance of counsel issues in this case as well. And I think it's important to keep in mind that the same trial attorney handled both trials. And if the first trial resulted in a mistrial, and the second trial resulted in convictions. It was a split verdict. The most serious convictions were thrown out, but it did result in convictions. And what was the difference between the two trials? Well, at the first trial, the defense elicited evidence that one of the victims, Salvador Levinas, told the police immediately after the shooting occurred that there were three people standing in the driveway and that two of them were gunmen and had guns, but there was a third unarmed bystander in the driveway. The defense and the state stipulated that a police officer would testify the same way, that immediately after the shooting occurred, Levinas told this police officer that there was a third unarmed person in the driveway. And at closing arguments at the first trial, defense counsel made extensive argument on this fact saying that in addition to Ms. Holland being incredible as a witness, the defendant couldn't be convicted because the state did not prove beyond a reasonable fact that Mr. Rodriguez was not this third unarmed bystander in the driveway. So, let's just... What's our standard of review? This is an ineffective assistance to counsel claim, so the facts are what they are, but then we review... What about for our bias claim? It's abusive discretion, isn't it? Well, we're talking about... In the testimony that's admissible at trial, it would be an abusive discretion standard. Is that not correct? That is correct, so long as it satisfies the constitutional standard. The question of whether it satisfies the constitutional standard is reviewed de novo. So, with respect to the bias and motive evidence, it's first de novo to determine whether it was constitutionally permissible to prohibit this evidence from coming in, and then if it was an abusive discretion after that. But with respect to the ineffective assistance to counsel claim, the facts... Whether the facts are clearly erroneous, and we have no dispute of fact in this particular issue, so it's reviewed de novo for whether or not their trial counsel was deficient, whether the deficient performance prejudiced the defense. Here, the issue is trial counsel abandoned this unarmed third-party bystander defense at the second trial. And I don't know what... There's nothing in the record explaining why that occurred, but it's clear from the record that he... Wasn't there a trial strategy? It could be, Your Honor, if there was a discernible strategic reason for it, but there is none in this particular case. The strategy is not inconsistent with the main defense, plus, trial counsel asked the question. When, at the second trial, both victims were asked if there was an unarmed third-party bystander in the driveway, and both of them testified that they could not remember, it would not have been... It would not have been detrimental to the defense case at all at that point, to either bring in the transcripts from the prior trial, to bring in the police officer's witness... Where's the prejudice? I'm sorry? Where's the prejudice? So, the standard for prejudice is a reasonable probability that the result would have been different. Here we have two trials where the evidence was largely the same, but they came to two different conclusions. The jury did. I think that establishes a reasonable probability that, but for trial counsel's abandonment of this viable defense, the result could have been different. Would have been different. You want to save some time for your rebuttal? I do. I just want to point out one last thing, Your Honor. That's not the only claim of ineffective assistance to counsel. We do allege that trial counsel is ineffective for failing to impeach Ms. Holland with their mess-around-with versus put something into the car. It's pretty clear from our perspective that these are two different statements and they mean two different things. Messing around with a car after a shooting occurs in your front yard or in your driveway is reasonable. It's reasonable once it's a safe area to go out and make sure that your car isn't leaking fuel, that nobody's hurt, that nothing's been damaged, that you can get to work the next day, that you don't have a flat tire. All of this is reasonable. It means something very different when somebody goes out and puts something into a car after a shooting. It certainly suggests that they have something to hide. So substantively, this was more damaging evidence and trial counsel is ineffective for failing to impeach Ms. Holland with her prior under oath statement that it was that what actually occurred was different. Thank you, Your Honors. I believe that the trial court judge limited the test or the cross-examination. He did not prohibit it. The defense, the defendant quotes the trial court judge in his brief where he says to the extent that this is consistent with my prior ruling, here is where I finally come down. And what the judge is saying is that if her testimony changed, he did not change that. And this was at the hearing before the second trial. This was not subsequent as they're saying at the time of the motion for a new trial. So, this was at the time of the motion in limine. Yes. And what the office they said was the trial court allowed the defendant to cross-examine Officer Holland regarding the past battery case and the offense that she put up to demonstrate the bad blood between the two parties and her possible bias. However, Officer Holland could not have been biased by an incident that had not yet taken place after she testified in the first trial. Why didn't I go to the extent of animosity between them to bring out any incidences which had occurred up to the point of the second trial? It would, but if it didn't, if her testimony had changed, yes, I would agree with you that the subsequent incident should come in to show her bias. There was no prejudice here. There was substantial evidence of the bad blood between these parties. And I do not believe it would be proper for her to be able to bring out any incident that occurred subsequent to her testimony to come in unless she changed her testimony. Now, the defense claims that she materially changed her testimony. We totally disagree with that. In the two trials, the first trial, she said he was messing around with the cars on his driveway. The second trial, she said he was putting something in the car on his driveway. But the truth of the matter is that she was cross-examining to the effect that did you ever see him with a gun when he came back out of the house? In both trials, the first and the second, she said she did not see him with the gun. There is not a material change between messing around and putting something in the car when the important testimony was whether or not she actually saw him with a gun when he came back out of the house. So we would say that the testimony was not materially changed. And the reason the defense counsel did not object or ask the judge if he could cross-examine her about this further incident that had nothing to do with her testimony. And that's where I was saying Justice, that the testimony came out that did you see him with a gun in his hand? And she said no. And my point was that was the important testimony, not whether she used the words or not.  that was the important            if he could cross-examine her about this further incident. And that's the reason that the defense counsel did not object. And I believe that there was no nexus to show bias on the part of Officer Howland because they're alleging that she fabricated who the shooter was when she made the 911 call. Certainly she couldn't be biased by something which had not occurred yet. And that's why I do not think there's any prejudice here because they let them bring in the battery where she had accused the defendant of battery and he was found not guilty and that was brought in during the trial and the fact that she had put up a fence between the two properties to show how they were   and that was brought in by the 911 operator. The statement should have been more clear and concise with regards to the identification and the other facts surrounding the shooting. She identified herself as a police officer. She told her neighbor at 8201 South Scottsdale Avenue was the person who was shooting at the end of his driveway. I think it would be disingenuous to say that she was not specific enough and she was saying it was this defendant that was shooting at the end of his driveway. Are there any other questions? Do you want to address the ineffective assistance? Sure. Regarding the ineffective assistance of counsel, the third party bystander defense was a very weak defense. One victim witness, Mr. Lagunas, told the police officer, Officer Lewis, that he thought there was a third person on the defendant's driveway that wasn't shooting that night. Vera and Officer Holland both said there were two people shooting at the end of the defendant's driveway. At the second trial defense counsel asked Mr. Lagunas, is it true that you said there was a third person standing on the end of the driveway? And he said, I don't recall saying that. So there was no definitive evidence that there was a third party on that driveway. And I don't want to speculate why defense counsel did not pursue it, but it's likely that it was a strategic reason. But there's no prejudice because if the defendant was standing on the driveway with two shooters and then he took the gun and went inside the house and then he fled, he could have been held accountable by the state for being a third party. That's the only difference between the first trial and the second trial. And that's pure speculation on the defendant's part that the third party defense was arguably successful at the defendant's first trial. We would say that there were other evidentiary issues which could have also been the deciding factor in the second trial that he went inside Officer Holland's house and looked from her vantage point to see if he could see what was happening on the defendant's driveway and he stated that he could see clearly the investigating officers from the waist up. That could have also been the reason why the second trial the defendant was a third party by standard defense and it wasn't pursued really in the first trial either. So I disagree with the defense that that's why the second trial was a guilty and the first trial was not guilty. The first trial was a hung jury. I'm sorry. I'm sorry. I thought that was going to be an issue. Thank you for correcting me. He said it was a mistrial and it wasn't a mistrial either. It was a hung jury. After the hung jury the judge entered an order of mistrial. Oh, I see. I see and correct it. I'm sorry. Are there any other questions? We ask that you please affirm the defendant's conviction. Thank you. Okay. Rebuttal. Yeah. I want to clean up a few things, your honor. This definitely was an issue. First, I just want to know what is the relief that you're looking for? A new trial. We're asking that the court go back and that this court order a new trial. This third party bystander issue was definitely raised at the first trial, definitely argued. I have it on page nine of the opening brief. Here's another glaring omission from the closing argument. Three guys. You heard it.  Two had guns. He goes on and on about that. There was no accountability instruction given to the jury. The state did not charge Mr. Hogan. I don't have a specific case that says that you can infer anything. Isn't       that was a winning defense? I don't have a specific case that says that you can infer anything. I don't have a specific case that  you can infer anything. I'm asking this court to infer that there's a reasonable probability that the result would have been different had trial counsel advanced the same defense that resulted in a hung jury in the second trial. That, the trial evidence was remarkably similar between the two cases. And this is a perfect example of what one jury is capable of doing and what one jury is not capable of doing. And for whatever reason there was at least one juror on the first jury that was not willing to convict. I think that that is something this court can look at and consider.  slide. Following up on Justice Gordon's comments about trial strategy, you had physical evidence that you could point to that didn't link the defendant to this offense, right? I mean, there was no fingerprints, there was nothing on the shell cases to tie him in, they didn't do any type of gun powder or gun residue tests, so you had enough physical  say it wasn't my guy. Correct, Your Honor. So, I mean, why take a leap at this third party defense when you already had solid physical evidence that you could say my guy wasn't them, it wasn't him? Well, because it's not inconsistent, Your Honor. Saying that there was these two guys who were standing in the driveway who run up from down the street or who are around that start shooting at this car and that there was a third unarmed person and that person was Mr. Rodriguez standing in the driveway, that would mean that there would be no gun powder residue on his hands. That would mean that he wouldn't have his fingerprints on the cartridges that were ejected. That would mean that he wouldn't have his fingerprints on any gun that was recovered even though there's no testimony that a gun was recovered here. There was nothing inconsistent from one to the   would mean that there was no evidence of his innocence. The fact that it wasn't presented and then at the trial where it wasn't presented that results in a guilty verdict, we think that's significant and shows a reasonable probability that the result would be that the defendant had occupied vehicle and not guilty on the attempted first-degree murder charges. I'm not sure exactly when that specific conviction occurred. With respect to her statement to the 9-1-1 dispatcher, she never ever said that it was this particular defendant. I want to make that clear. She was cross-examined on that point. She admitted during trial that she never identified this particular defendant and she also admitted that there were multiple people living next door. Her statement at the 9-1-1 dispatcher was that I think she used the specific address like 830-02 North Scottsdale was shooting at someone. She never specified that it was one person or multiple people. She just made that statement on the 9-1-1 call. It wasn't until afterwards after she had some time to think and after the police showed up that she identified Mr. Rodriguez as the shooter. I do finally because the court seems to be very interested in what the trial court's actual ruling was. The state made a motion in limine and then on the day it made the motion in limine, that's in the reported proceedings as transcript MM, the trial court said it's inclined to follow the state's position but wants some briefing on the following day after the trial parties presented some written argument, the court said, so the court's first ruling was I tend to disagree with defense counsel so if she somehow embellishes her identification testimony or something else that would enhance her testimony that was not done in the first trial then I might agree with the defense. That was at the day at the motion in limine hearing. That was MM9 to 10. Subsequently the next day the court says all right, here's how I rule, I'm going to allow the defense to do this and once you do it, even if it takes two hours, I'm going to allow the state to go through every prior consistent statement that Ms. Hollins has ever made that's consistent with her prior testimony. And then there's a slight discussion about what that ruling is and trial counsel at that point has been given permission to bring in this evidence and then the state could then bring in all the prior consistent statements and for what it's worth that is what the state of the law is. Trial counsel gets to bring in bias motive evidence and then the state can then bring in prior consistent statements and the parties can argue about what's more appropriate and valuable for the jury's consideration. But that's not where the court finally ended up. About 100 pages later at N.N. 94 and N.N.  Ms. Hollins testified about whether or not there was a case pending against her son that's being prosecuted by the Cook County state attorney's office. You may not cross examine her concerning the fact that Mr. Rodriguez is the alleged victim in that crime. And if she says yes, that's the case and you stop there. No. That is the last word from the trial court before Ms. Hollins testifies and that's on page N.N. 94 through 97. So for all these reasons we are asking this court to remand the matter for a new trial. The trial counsel was barred from presenting this important evidence with respect to her motive and bias. In addition, the trial counsel was ineffective in prejudice the defense and warrants a new trial. Thank you. I want to thank you guys for giving us a very good time. We will take the case under advisement.